IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MALLINCKRODT HOSPITAL PRODUCTS IP LTD., INO THERAPEUTICS LLC and IKARIA, INC., | ) ) ) | |
| | ) | C.A. No. 15-170 (GMS) |
| Plaintiffs, | ) ) | |
| | ) | REDACTED - |
| v. | ) ) | PUBLIC VERSION |
| PRAXAIR DISTRIBUTION, INC. and PRAXAIR, INC., | ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' OPENING MEMORANDUM IN SUPPORT OF
### MOTION TO DISQUALIFY MORGAN LEWIS AS DEFENDANTS' COUNSEL

OF COUNSEL:

Kenneth G. Schuler
David K. Callahan
Marc N. Zubick
Brenda L. Danek
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700

Melissa A. Brand
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Andrew J. Fossum
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
(713) 546-5400

David F. Kowalski
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

Nicholas Yu
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

May 6, 2016

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
dfahnestock@mnat.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND ......................................................................................3

    A.  Ikaria's Development of the Inhaled Nitric Oxide Drug Product INOmax® ..........3

    B.  Morgan Lewis's Longtime Representation of Ikaria ████████████ ...........4

    C.  Mallinckrodt's Acquisition of Ikaria and the INOmax® Product ..........................5

    D.  The Current Patent Infringement Litigation Against Praxair Based on its ANDA for Generic INOmax® ..............................................................................................6

    E.  The Conflict Created by Morgan Lewis's Involvement in the Current Litigation ..6

III.  LEGAL STANDARDS ...............................................................................................9

IV.  ARGUMENT .............................................................................................................10

    A.  Morgan Lewis's Representation of Praxair Violates Model Rule Of Professional Conduct 1.7(a) .......................................................................................................10

    B.  Plaintiffs Did Not Consent To Morgan Lewis Representing Praxair In The Current Litigation ..................................................................................................10

        1.  Morgan Lewis's Representation of Ikaria is "Substantially Related" to its Current Representation of Praxair ..........................................................11

            a.  Morgan Lewis's Representation of Ikaria Involves Issues Substantially Related to Morgan Lewis's Current Representation of Defendants in the Instant Litigation ......................................11

                (1)  INOmax®-Related Advice ..............................................11

                (2)  The Praxair/12th Man Investigation .................................11

                (3)  Advice Regarding ████████████ 12

                (4)  The Current Litigation ...................................................13

             b.  Morgan Lewis Obtained Confidential Ikaria Information That Could be Used to Plaintiffs' Detriment in the Current Litigation 14

    C.  Disqualification Is The Proper Remedy For The Model Rule 1.7(a) Violation ....18

V.  CONCLUSION ..........................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*,
  693 F. Supp. 2d 399 (D. Del. 2010) ..................................................................16

*Cablevision Lightpath, Inc. v. Verizon N.Y. Inc.*,
  2011 U.S. Dist. LEXIS 96872 (E.D.N.Y. Aug. 30, 2011) ...................................16

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
  2012 U.S. Dist. LEXIS 136388 (D. Del. Sept. 24, 2012)................................. 16, 17, 18, 20

*Innovative Memory Sols. v. Micron Tech., Inc.*,
  2015 U.S. Dist. LEXIS 63861 (D. Del. May 15, 2015) ........................................ 9, 10, 16, 20

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
  2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011) ...............................................*passim*

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*,
  803 F. Supp. 957 (D. Del. 1992) .........................................................................19

*Madukwe v. Del. State Univ.*,
  552 F. Supp. 2d 452 (D. Del. 2008) ................................................................15, 16

*Parallel Iron, LLC v. Adobe Sys. Inc.*,
  2013 U.S. Dist. LEXIS 29382 (D. Del. Mar. 4, 2013)...................................... 9, 19

*Richardson v. Hamilton Int'l Corp.*,
  469 F.2d 1382 (3d. Cir. 1972)...............................................................................15

*Webb v. E.I. du Pont de Nemours & Co.*,
  811 F. Supp. 158 (D. Del. 1992) ......................................................................15, 16

### STATUTES

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .....................................................................................6

21 U.S.C. § 355(j)(2)(B)(ii).............................................................................................6

### RULES

L.R. 83.6(d) ......................................................................................................................9

Mod. R. of Prof. Cond. 1.7 ................................................................................ 9, 10, 18

Mod. R. of Prof. Cond. 1.9 .................................................................................. 10, 15

## I.   INTRODUCTION

Plaintiffs Mallinckrodt Hospital Products IP Ltd. ("Mallinckrodt"), INO Therapeutics LLC ("INO"), and Ikaria, Inc. ("Ikaria") understand that motions for disqualification should not be lightly brought.  In this case, however, Plaintiffs respectfully request that the Court disqualify Defendants' new counsel Morgan, Lewis & Bockius LLP ("Morgan Lewis"), which appeared as counsel for Defendants on March 1, 2016 (D.I. 67).  Despite long serving as outside counsel to both of the Plaintiffs—Ikaria and Ikaria's parent company Mallinckrodt plc—Morgan Lewis abruptly **and without any notice to Plaintiffs** took on this litigation as outside counsel for Defendants Praxair Distribution, Inc. and Praxair, Inc. (collectively, "Defendants" or "Praxair") because certain attorneys previously affiliated with K&L Gates LLP ("K&L Gates") recently decamped to Morgan Lewis.  But Morgan Lewis's business decision to add lateral candidates does not absolve it of its duty of loyalty to its longstanding clients Ikaria and Mallinckrodt.

Ikaria began as a small company with a single drug product: inhaled nitric oxide ("iNO", marketed as INOmax®).  As part of its longtime representation of Ikaria, Morgan Lewis attorneys were intimately involved in Ikaria's legal strategies, including those ███████████████ Morgan Lewis attorneys received extensive confidential information about and provided legal advice ███████████████ including the exchange of privileged communications concerning ██████████████████████████████████████████████████████ ██████████████ as well as privileged information regarding ██████████ ██████████████ as reflected documents from Morgan Lewis's files:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

(Ex. 12 at 5.)[1]  Morgan Lewis also provided legal advice regarding ███████████████

███████████████████████████████████ (Ex. 13 at 6

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████ In addition,

Morgan Lewis engaged in privileged communications with Ikaria about ██████████

█████████████████████████████████████████

███████████████████████████████████



(Ex. 6 at 2, Ex. 8 at 1.)

The instant litigation involves Defendants' Abbreviated New Drug Application

("ANDA") seeking FDA approval to market a generic version of INOmax®—███████████

███████████████████████ In this case, Plaintiffs assert that Defendants'

ANDA infringes ten of their patents—████████████████████████████████

████████████████████ Other patents asserted in the case relate to and cover

Plaintiffs' innovative delivery device technology—██████████████████████

██████████████████ Praxair has also asserted a patent misuse defense and

---

[1]  Unless otherwise noted, all exhibits are to the Declaration of Jonathan N. Provoost ("Provoost Decl.") that is being filed concurrently herewith.  All emphases are added unless otherwise noted.

counterclaims in this case that implicate Plaintiffs' strategies concerning patent exclusivity and

listing of the asserted patents in the FDA publication Approved Drug Products With Therapeutic

Equivalence Evaluations (the "Orange Book")— 

And, obviously, the case

involves patent litigation against Praxair regarding iNO technology—

Plaintiffs submit that the receipt of confidential information and/or provision of legal

advice concerning

qualifies as "substantially related" under controlling authority. As a result,

Morgan Lewis has a clear conflict of interest that Plaintiffs have not waived. That conclusion is

buttressed by the Declaration of Professor Thomas B. Metzloff ("Metzloff Decl."), a legal ethics

expert teaching at Duke. In light of Morgan Lewis's conflict, Plaintiffs respectfully request that

the Court disqualify Morgan Lewis from representing Defendants in this action.

## II.     FACTUAL BACKGROUND

### A.     Ikaria's Development of the Inhaled Nitric Oxide Drug Product INOmax®

Ikaria developed and received approval from the FDA in 1999 to market INOmax® in the

United States for the treatment of term and near-term neonates with hypoxic respiratory failure

associated with clinical or echocardiographic evidence of pulmonary hypertension. (Provoost

Decl. ¶ 2.) Ikaria continued to invest in research and development to innovate in the field of iNO

therapy. (*Id.* ¶ 3.) For example, Ikaria successfully developed safer methods of supplying iNO

to health care providers and of administering iNO to the critically-ill infants who are candidates

for iNO treatment while reducing the risk that the treatment will result in pulmonary edema and

other serious adverse events. (*Id.*) Ikaria has obtained five patents related to these methods

(hereinafter the "HF Patents").  (*See* D.I. 57 at ¶¶ 15-24.)  Ikaria also developed improved

products for administering iNO and obtained five patents asserted in this action that relate to

devices having various safety features, as well as the use of iNO with regard to such devices

(hereinafter the "DSIR Patents").  (*See id.* ¶¶ 25-37.)  Mallinckrodt plc (the parent company of

Plaintiff Mallinckrodt) acquired Ikaria in 2015.  (Provoost Decl. ¶ 1.)  Plaintiff Mallinckrodt

holds the rights to, *inter alia*, the New Drug Application ("NDA") for INOmax® and the HF and

DSIR Patents asserted in this case.  (D.I. 57 at ¶¶ 13, 15-37.)

### B. Morgan Lewis's Longtime Representation of Ikaria ▮▮▮▮▮▮▮▮

Like most companies, Ikaria relied upon outside legal counsel ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ (Provoost Decl. ¶ 5.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ (*Id.*)  Ikaria engaged Morgan Lewis to assist with that process and to ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)  Ikaria's decision to retain Morgan Lewis as its

primary outside legal counsel was relatively straightforward, since Ikaria's former general

counsel and associate general counsel had both previously worked at Morgan Lewis.  (*Id.* ¶ 6.)

Morgan Lewis received extensive Ikaria confidential information and provided legal

advice regarding a wide range of subjects.  (*Id.* ¶ 7.)  In doing so, Morgan Lewis on occasion

reviewed legal work prepared by other firms for Ikaria.  (*Id.*)  From October 2007 through

December 2015, over 100 Morgan Lewis attorneys in multiple offices worked approximately

▮▮▮ hours on Ikaria matters, billing ▮▮▮▮▮ dollars for their legal work.  (*Id.* ¶ 8.) ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████[2] (*Id.* ¶ 10.)  Morgan Lewis's work

included but was not limited to the following topics:

- Legal advice ████████████████████████████████████████

  ████████████████████ (Provoost Decl. ¶¶ 11-15, Exs. 6-8);

- Legal advice regarding ██████████████████████████████

  ███████████ (*id.* ¶¶ 16-20, 22, Exs. 11-12);

- Legal advice regarding █████████████████████████████

  ████████ (*id.* ¶¶ 16-20);

- Legal advice regarding █████████████████████████████

  ███████████ *id.* ¶¶ 21-23, Exs. 10-13); and

- Legal advice regarding █████████████ *id.* ¶¶ 24-26, Exs. 14-15; Declaration of David K.
  Callahan ("Callahan Decl.")███████████████████████.)

### C.    Mallinckrodt's Acquisition of Ikaria and the INOmax® Product

Before acquiring Ikaria in 2015, Mallinckrodt was also a client of Morgan Lewis and

remains so today.  (Provoost Decl. ¶ 4.)  In December 2013, Mallinckrodt and Morgan Lewis

negotiated an engagement letter ██████████████████████████████

████████████ (Ex. 3.)  For example, the engagement letter █████████████████

██████████████████████████████████████████████

████████ (*Id.* at 2.)[3]  The engagement letter also makes it clear that ████████████

████████████████████████████████████████████████

████████████████████████████████████████████

---

[2]  INOmax® is Ikaria's only drug product.  (*Id.* ¶ 2.)  Ikaria's other products are machines used
to administer INOmax®.  (*Id.*)

[3]  The engagement letter also provides that ████████████████████████████

███████████████████████████████████████ (*Id.* at 2-3.)

███████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.* at 2-3.)[4]

### D. The Current Patent Infringement Litigation Against Praxair Based on its ANDA for Generic INOmax®

On January 6, 2015, Praxair notified Ikaria pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) that it had submitted an ANDA seeking approval to engage in the commercial manufacture, use, or sale of a generic version of INOmax® prior to the expiration of the HF and DSIR patents, all of which are listed in the Orange Book. (D.I. 57 at ¶ 42.) Praxair informed Ikaria that Praxair had filed a Paragraph IV certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) alleging that the HF and DSIR patents are invalid/unenforceable and/or will not be infringed by the manufacture, use, or sale of Praxair's proposed product. (*Id.* at ¶ 43.) Based on Praxair's filing, Ikaria brought this patent infringement action in February 2015. (D.I. 1.)[5] Plaintiffs assert that by submitting its ANDA, Praxair has committed an act of infringement with regard to at least one claim of each of the ten asserted patents (comprising the HF and DSIR patents). (D.I. 57 ¶¶ 15-37.) Praxair is asserting numerous affirmative defenses and counterclaims, including non-infringement, invalidity, and delisting the asserted patents from the Orange Book. (D.I. 60 at 22-62.)

### E. The Conflict Created by Morgan Lewis's Involvement in the Current Litigation

Defendants have been represented in this case by a number of attorneys at the law firm K&L Gates LLP ("K&L Gates"), including Michael Abernathy, Sanjay Murthy, Sara Kerrane,

---

[4] Ikaria also had engagement letters with Morgan Lewis. And—much like the Mallinckrodt engagement—those letters made it clear ███████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████ (Ex. 1 at 1-2; *see also* Ex. 2 at 1-2.)

[5] Ikaria sued with co-Plaintiff INO Therapeutics LLC. (D.I. 1.) Following the Mallinckrodt acquisition, Ikaria is no longer a separate entity. (*See* D.I. 57; Provoost Decl. ¶ 4.)

Benjamin Weed, Christopher Hanba, Margaux Nair, Brian Arnold, and Maria Doukas. (D.I. 9,

24, and 42.) Unbeknownst to Plaintiffs, some—but not all—of the K&L Gates attorneys

working on the case were negotiating with Morgan Lewis to implement a lateral move to that

firm.[6] During this process, neither those attorneys nor Morgan Lewis *ever* contacted Plaintiffs

regarding the move or the obvious conflicts that it would create. (Callahan Decl. ¶ 9; Provoost

Decl. ¶ 27.) Instead, Plaintiffs only became aware of the move after it was announced in the

trade press on February 26, 2016. (*Id.*, Ex. 16.)

A few days later, Morgan Lewis informed Plaintiffs that it intended to represent Praxair

against them in the instant INOmax® litigation. (Callahan Decl. ¶ 12.) In follow-up

communications with Plaintiffs' outside litigation counsel, Morgan Lewis's managing partner,

Mr. Stephen Wall, took the position that the terms of the December 2013 engagement letter

██████████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.* ¶ 13.)

Plaintiffs assume that Mr. Wall did not have access to all of the relevant facts when he

made that assertion, as it is belied by the scope and duration of Plaintiffs' engagement of Morgan

Lewis with regard to matters that plainly are substantially related to the instant lawsuit. For

example, Mr. Wall incorrectly stated that no Morgan Lewis intellectual property litigators

worked on the Ikaria file (*id.*), ████████████████████████████████████

████████████████████████████████[7] Mr. Wall was also apparently unaware that Morgan

---

[6] Plaintiffs are informed and believe that Messrs. Abernathy and Murthy and Ms. Doukas have lateralled to Morgan Lewis (hereinafter referred to as the "Lateraling Attorneys"). (D.I. 67.) Messrs. Weed and Hanba and Ms. Nair apparently remain at K&L Gates. (Callahan Decl. ¶ 11.) Ms. Kerrane is apparently no longer affiliated with either firm. (*Id.*)

[7] For example, Mr. Wall was apparently unaware that Christopher Halliday—an IP litigation partner who works in the same office as Mr. Wall—had provided legal ██████ e to Ikaria regarding ████████████████████████ (Provoost Decl. ¶ 13, Exs. 6-8, *infra* at 12.) Mr. Wall was

Lewis had received confidential information and provided legal advice regarding ███

████████████████████████████████████████████████████████████

█████████████████ (Provoost Decl. ¶¶ 16-22, Exs. 11-12.)

On March 14, 2016, after reviewing invoices and confirming the broad nature and scope of Morgan Lewis's representation, Plaintiffs requested a copy of their client files from Morgan Lewis.  (Callahan Decl. ¶ 14.)  In response to that request, Morgan Lewis produced 2,408 documents (totaling 23,652 pages) on March 21, 2016 and indicated that it would produce more later that week. (*Id.* ¶ 15.)  When they did not, Plaintiffs' counsel contacted Mr. Wall the following week for a status update, and he explained that the document production had been delayed due to the fact that, among other things, there were "a ***large number*** of former Morgan Lewis attorneys" whose emails needed to be retrieved and searched for relevant information, and that additional documents would be forthcoming.  (*Id.* ¶ 16.)  On April 1, 2016 Morgan Lewis produced another 3,521 emails and attachments, totaling 37,149 additional pages of material reflecting its work for Ikaria and/or Mallinckrodt. (*Id.* ¶ 17.)

Following a review of the Morgan Lewis client files, Plaintiffs confirmed that Morgan Lewis had indeed worked on a number of matters that were substantially related to the instant litigation, and reached out to Mr. Wall for a follow-up discussion, in which Plaintiffs directed Mr. Wall to documents from Morgan Lewis's own files demonstrating, among other things, that Morgan Lewis had received confidential information from Plaintiffs and provided legal advice regarding ████████████████████████████████████████████████████

████████████████████████ (Callahan Decl. ¶¶ 18-19.)  Plaintiffs

also apparently unaware that Morgan Lewis had provided Ikaria with legal advice regarding ██████████████████████████████████████████████████

(Provoost Decl. ¶¶ 21-23, Exs. 10-13.)

asked Morgan Lewis to reconsider its position, and to withdraw.  (*Id.*)  Morgan Lewis refused,

and Plaintiffs explained that they regrettably but necessarily had to proceed with the instant

motion.  (*Id.* ¶¶ 20-21.)   Plaintiffs proceeded to negotiate a stipulation with Morgan Lewis

concerning the logistics of filing the motion.  (*Id.* ¶ 21, D.I. 99.)

## III.    LEGAL STANDARDS

The ABA Model Rules of Professional Conduct govern attorneys practicing in the

District of Delaware.  *See* Local Rule 83.6(d) (adopting the Model Rules); *Parallel Iron, LLC v.*

*Adobe Sys. Inc.*, No. 12-874-RGA, 2013 U.S. Dist. LEXIS 29382, at *5 (D. Del. Mar. 4, 2013).

In relevant part, Model Rule 1.7(a) provides that a lawyer shall not represent a client if "the

representation of one client will be directly adverse to another client" unless both clients give

informed and written consent.  *See* Model R. 1.7(a)-(b).[8]

A district court has the power to disqualify attorneys and law firms for violation of the

Model Rules.  *Parallel Iron, LLC*, No. 12-874-RGA, 2013 U.S. Dist. LEXIS 29382, at *6.

While disqualification is not automatic, the Court has "wide discretion in framing its sanctions to

be just and fair to all parties involved."  *Id.* (quotation omitted).  For example, the court may

disqualify an attorney for "failing to avoid even the appearance of impropriety" because "[t]he

maintenance of public confidence in the propriety of the conduct of those associated with the

administration of justice is so important."  *Intellectual Ventures I LLC v. Checkpoint Software*

*Techs. Ltd.*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921, at *12 (D. Del. June 22, 2011)

(quotation omitted).  To determine whether a current matter is "substantially related," courts

typically analyze three questions:  (1) the nature and scope of the earlier representation at issue;

(2) the nature of the present lawsuit; and (3) whether in the course of the earlier representation

---

[8]    Model Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm" subject
to certain exceptions that do not apply here.  *See Innovative Memory Sols.*, 2015 U.S. Dist.
LEXIS 63861, at *6.

the client might have disclosed to his attorney confidences which could be relevant and detrimental to the client in the present action. *See, e.g.*, *Innovative Memory Sols. v. Micron Tech., Inc.*, No. 14-1480-RGA, 2015 U.S. Dist. LEXIS 63861, at *4 (D. Del. May 15, 2015) (addressing disqualification under Model Rule 1.9).

## IV.    ARGUMENT

### A.    Morgan Lewis's Representation of Praxair Violates Model Rule Of Professional Conduct 1.7(a)

There is no dispute that Morgan Lewis has represented and continues to represent Ikaria and its parent company Mallinckrodt.  There is similarly no dispute that Morgan Lewis recently appeared as counsel adverse to both Plaintiffs in the instant litigation.  Finally, there is no dispute that in representing Praxair in this litigation, Morgan Lewis is directly adverse to its clients Ikaria and Mallinckrodt.  It is therefore undisputed that Morgan Lewis has created a direct conflict within the scope of Model Rule 1.7(a).  (*See* Metzloff Decl. ¶¶ 10, 23-24, 35-37.)

### B.    Plaintiffs Did Not Consent To Morgan Lewis Representing Praxair In The Current Litigation

Morgan Lewis does not deny that a conflict of interest exists based on its representation of Praxair in the current litigation.  (Callahan Decl. ¶ 13.)   Instead, Morgan Lewis asserts that

████████████████████████████████████████████████████████████

████████████████    (*Id.*) That argument fails.  The relevant portion of the letter provides that:



(Ex. 3 at 2; *see also* Ex. 1 at 1-2, Ex. 2 at 1-2.)  Plaintiffs have not waived the present conflict

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████  (Metzloff Decl. ¶¶ 24-37.)

1.      **Morgan Lewis's Representation of Ikaria is "Substantially Related" to its Current Representation of Praxair**

a.      **Morgan Lewis's Representation of Ikaria Involves Issues Substantially Related to Morgan Lewis's Current Representation of Defendants in the Instant Litigation**

Morgan Lewis's representation of Ikaria has been both "broad in nature and extensive in scope." *Intellectual Ventures I LLC*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921, at *29. Morgan Lewis has served as Ikaria's primary outside counsel from 2007 through its appearance adverse to Ikaria in this action.  (Provoost Decl. ¶ 7.)  As noted above, over the course of eight years Morgan Lewis billed Plaintiffs ████████ dollars for approximately █████ hours of legal work performed by over 100 attorneys in multiple offices.  (*Id.* ¶ 8.)  As such, Morgan Lewis worked on matters ██████████████████████  (*See id.* ¶ 10.)

(1)      ██████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████  (Provoost Decl. ¶ 10.)

That representation gave Morgan Lewis confidential insight into ████████████████████

███████████████████████  (*Id.* ¶¶ 10, 21-26.)

(2)      The Praxair/12[th] Man Investigation

Morgan Lewis also received confidential information and provided legal advice regarding

██████████████████████████████  (Provoost Decl. ¶ 11.)  Among

other things, Morgan Lewis provided advice about ███████████████████████

█████████ ██ ███████████████████████ (*Id.*)[9]  Ikaria engaged Morgan Lewis to

████████████████████████████ ████████████████████████████

██████████ (Provoost Decl. ¶ 12.)[10]

████████████████████████████████ Ikaria worked closely with

Christopher Halliday, a Morgan Lewis IP litigation partner, to ████████████████

████████████████████████████ (Provoost Decl. ¶ 13.)  That work

involved legal advice regarding ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████ (*Id.* ¶¶ 13-15, Exs. 6-8.)  The Praxair/12[th] Man Investigation also

involved ████████████████████████████████████

████████████████████████████████████ (Provoost

Decl. ¶¶ 16-20.)  Morgan Lewis also provided legal advice to Ikaria regarding ███████

███████████████████████████████████████

████████████████ (*See id.*)

        (3)     Advice Regarding ███████████████████

████████████████████████████████████

██████, Morgan Lewis also received confidential information from Ikaria and provided



---

[9]  As Mr. Provoost explains, 12th Man served as a broker between CareFusion (who would offer a nitric oxide delivery system) and Praxair (which would supply the nitric oxide gas itself).  (*Id.* ¶ 12, ██████████████████████████████████████ ████████████████ (Ex. 5 at 7.)

[10]  Praxair's failed efforts to develop and market iNO and iNO delivery devices are important issues in the case, as it pertains to, *inter alia*, Praxair's assertions of invalidity.  And Praxair was heavily involved in the 12th Man collaboration—Defendants recently disclosed that a 12th Man-related search term resulted in nearly 1500 document "hits" from within Praxair's files.  (Callahan Decl. ¶ 8.)



legal advice regarding █████████████████████████████████████████████
(Provoost Decl. ¶ 21-22.)  For example, in November 2010, ████████████████
████████████████ Ikaria sent Morgan Lewis a privileged PowerPoint presentation
█████████████████████████████████████████████████████████████████
█████████████████████████████████████ (Ex. 12 at 5.)  Morgan
Lewis also received confidential information and provided legal advice about the█████
████████████████████████ (Provoost Decl. ¶ 23, Ex. 13 at 6.)  That work
involved ████████████████████ (*Id.*)

(4)   <u>The Current Litigation</u>

The current litigation relates to Praxair's attempt to gain approval for a generic version of
INOmax®. ██████████████████████████████████████████
█████████████████████████████████████████████████████

██████ *See Intellectual Ventures I LLC*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921, at
*29 ("The subject matter of the prior representation overlaps with the subject matter of the
current litigation: *IV's entire business is about intellectual property rights....*").  The current
litigation also involves—among other issues—(1) allegations that Plaintiffs' listing of the
asserted patents in the Orange Book is improper; (2) allegations that Plaintiffs are "estopped
from asserting the Patents-in-Suit" based on issues arising out of the prosecution of the asserted
patents; (3) allegations that the asserted patents are invalid; and (4) allegations that Defendants
do not infringe the asserted patents.  (*See, e.g.*, D.I. 60 at 21-23.)

Praxair has also asserted a patent misuse affirmative defense in this action related to the
listing of the asserted patents in the Orange Book.  (D.I. 60 at 22-23.)  As noted above, Plaintiffs
previously provided Morgan Lewis with information regarding ███████████████████
███████████████████████ and Morgan Lewis provided legal advice to Plaintiffs

about ███████████████████████████████████████████████████████

████████████ *Supra* at 11-13.  Defendants have also sought discovery related to several issues

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

**b.      Morgan Lewis Obtained Confidential Ikaria Information That Could be Used to Plaintiffs' Detriment in the Current Litigation**

The type of confidential information ████████████████████████████████

that Morgan Lewis obtained from Plaintiffs and provided legal advice about could be used to

Plaintiffs' detriment and is "substantially related" to the subject matter of the litigation.  *See*

*Intellectual Ventures I LLC*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921, at *31 ("[T]he

possibility that IV would one day be involved in patent litigation was among the broad topics on

14

which IV relied on WSGR for legal representation."); (Metzloff Decl. ¶¶ 25-38).  Among other things, the confidential information that Morgan Lewis received and the legal advice it provided could give Praxair insight regarding "what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses." *Webb v. E.I. du Pont de Nemours & Co.*, 811 F. Supp. 158, 162 (D. Del. 1992); (Metzloff Decl. ¶ 36).

In addition, while Plaintiffs have provided a sworn declaration outlining the general scope and nature of Morgan Lewis's representation of Ikaria, as well as exemplary documents illustrating the substantial relationship between Morgan Lewis's representation of Mallinckrodt and Ikaria and the instant case, it should be noted that Plaintiffs are not required to reveal the specific confidential information that Morgan Lewis obtained during its prior representation in order to disqualify Morgan Lewis.  *See* Model Rule 1.9(a) cmt. 3 ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."). Instead, Plaintiffs are only required to establish that Morgan Lewis ***might*** have acquired "substantially related material."  *See Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d. Cir. 1972).  Based on the scope and nature of Morgan Lewis's representation, and the fact that Ikaria is essentially a single-product company, the Court appropriately assume that Morgan Lewis received confidential information substantially related to this litigation "without inquiring into [its] nature and extent."  *See Webb*, 811 F. Supp. 158 at 162.[11]  However, in light of the

---

[11]   Such an assumption is well-grounded in the case law.  For example, the court in *Madukwe v. Del. State Univ.* disqualified a firm that had served as the longtime outside counsel, noting that over the course of the representation the firm had gained significant confidential information about the client's general practices, and that "[i]t requires no stretch of the imagination to conclude that in the course of the numerous … matters … S&R might have acquired confidential information…."  552 F. Supp. 2d 452, 461 (D. Del. 2008).  And in

testimony and exemplary documents that Plaintiffs have provided, the record demonstrates that

Morgan Lewis *in fact* obtained confidential information that could be used to the detriment of

Plaintiffs.  The nature of Morgan Lewis's representation sufficiently demonstrates that it

obtained confidential information that could be used to materially disadvantage Plaintiffs in the

current litigation.  *See, e.g.*, *Webb*, 811 F. Supp. at 162; *Madukwe v. Del. State Univ.*, 552 F.

Supp. 2d 452, 461 (D. Del. 2008); (Metzloff Decl. ¶ 36).

   Courts have rejected attempts to narrow the scope of what constitutes a "substantial

relationship."  For example, a "substantial relationship" does not require a "factual nexus"

between the prior representation and the current litigation.  *Intellectual Ventures I LLC*,  No. 10-

1067-LPS, 2011 U.S. Dist. LEXIS 154921, at *28.  Here, Morgan Lewis received confidential

information and/or provided Ikaria with legal advice regarding ████████████████

████████████████████████████████████████

████████████████████████████  Courts have routinely

found such facts to constitute a substantial relationship.  *See, e.g.*, *Apeldyn Corp. v. Samsung

Elecs. Co.*, *Ltd.*, 693 F. Supp. 2d 399, 401-07 (D. Del. 2010) (disqualifying firm based on,

among other things, lateral move of a former Morgan Lewis partner to the firm, where the

partner had previously worked on matters involving related technology at Morgan Lewis);

*Innovative Memory Sols.*, No. 14-1480-RGA, 2015 U.S. Dist. LEXIS 63861, at *12.

   Courts have also disqualified counsel that previously served as "primary outside counsel"

for a party.  *See, e.g.*, *EON Corp. IP Holdings LLC v. FLO TV Inc.*, No. 10-812-RGA, 2012 U.S.

Dist. LEXIS 136388, at *10 (D. Del. Sept. 24, 2012); *Cablevision Lightpath, Inc. v. Verizon N.Y.*

---

*Intellectual Ventures I LLC*, the attorneys previously advised and received confidential
information from the client on a variety of issues, though "much, if not all, of the
representation … was outside of a litigation context."  2011 U.S. Dist. LEXIS 154921, at
*23, 34.  Counsel were disqualified in these cases despite having relationships that were less
"substantial" than Morgan Lewis's representation of Plaintiffs in the instant case.

*Inc.*, No. 11-CV-2457, 2011 U.S. Dist. LEXIS 96872, at *3, 16 (E.D.N.Y. Aug. 30, 2011).  In

particular, *EON Corp.* was a patent case where attorneys at Latham & Watkins had represented a

company related to one of the parties **seventeen years earlier**, and had primarily provided

"corporate and regulatory" advice, which had included "representation before the FCC in

connection with technology that was similar or the same as the technology that is described in

the patent."  2012 U.S. Dist. LEXIS 136388, at *3.  As Judge Andrews explained:

> Latham was the primary outside counsel for EON between 1988 and 1995. The
> representation was broad.  Latham attorneys were certainly generally familiar
> with EON's business, and specifically familiar with many aspects of the business,
> including the technology that is at least partially reflected in the patent at issue.
> On the other hand, there is no evidence that Latham attorneys played any part in
> obtaining the patent at issue. Further, the patent issued well after Latham's
> representation ceased, and there is no evidence that Latham played any part in any
> licensing efforts involving this patent.

*Id.* at *10-11.  The court nonetheless found that Latham's representation seventeen years earlier

was "substantially related" to patent lawsuit, noting that:

> Some of the invalidity defenses, if pursued, could involve factual inquiry into
> EON's activities in the relevant time period, and it is conceivable that information
> about related factual matters could have been shared with Latham attorneys. …
> [D]ue to the presence of the invalidity issues, the answer to the question, "might
> EON have disclosed to Latham confidences which could be relevant to the present
> action, and detrimental to EON in this action," is surely yes.

*Id.* at *13-14.  The court proceeded to disqualify Latham, even though the Latham attorneys

working on the pending patent case were not involved in the prior representation and Latham had

implemented an ethical wall.  *Id.* at *15-17.

The relationship between Morgan Lewis's representation of Ikaria and Mallinckrodt and

the instant case is significantly more "substantial" than the relationship at issue in *EON Corp.*

Like in *EON Corp*, Morgan Lewis served as Ikaria's "primary outside counsel."  *Id.* at *10;

(Provoost Decl. ¶ 6).  However, Morgan Lewis was not merely "**generally familiar** with

[Ikaria's] business, and specifically familiar with many aspects of the business, including the

technology that is at least partially reflected in the patent at issue"—Morgan Lewis is **intimately**

*familiar* with Ikaria's business, and received confidential information and provided legal advice

about ███████████████████████████. *EON Corp.*, 2012 U.S. Dist. LEXIS 136388,

at *10-11; (Provoost Decl. ¶¶ 21-23).

Defendants have also asserted an invalidity defense that not only "*could* involve factual

inquiry into [Ikaria's] activities in the relevant time period"—████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████  *EON Corp.*, 2012 U.S. Dist. LEXIS 136388, at *13-14; (Provoost Decl. ¶ 10, 21-23;

Callahan Decl. ██████████████).  Defendants have also ██████████████

██████████████████████ about which Morgan Lewis received

confidential information, and have sought discovery regarding multiple issues about which

Morgan Lewis received confidential information and/or provided legal advice.  (D.I. 60 at 22-62;

Provoost Decl. ¶¶ 16-22; *supra* at 14.)

### C.    Disqualification Is The Proper Remedy For The Model Rule 1.7(a) Violation

As demonstrated above, the current litigation is "substantially related" to Morgan Lewis's

prior work for Plaintiffs, and Plaintiffs provided Morgan Lewis with confidential information

that could be used to the material disadvantage of Plaintiffs.  As a result, Morgan Lewis is barred

from representing Defendants under Model Rule 1.7 ██████████████████, and

Plaintiffs have not consented to the conflict.  (Metzloff Decl. ¶¶ 10, 36-38.)

In light of the conflict, the Court must determine the appropriate remedy.  Plaintiffs

respectfully submit that disqualification is appropriate here.  Disqualifying Morgan Lewis

preserves client confidentiality and avoids having an attorney take positions adverse to a client,

the key concerns that should animate the Court's analysis regarding the proper remedy.  *See*

18

*Intellectual Ventures I LLC*, 2011 U.S. Dist. LEXIS 154921, at *40-41.  Moreover, while disqualification is not automatic, "[b]ecause the interest sought to be protected by Rule 1.7 is one of loyalty, a *per se* rule of disqualification should be applied when that rule is breached." *Parallel Iron*, 2013 U.S. Dist. LEXIS 29382, at *6, 12 (quotations omitted).

None of Defendants' potential hardships outweigh these concerns.  For example, disqualifying Morgan Lewis will not result in any significant disruption for Defendants, since Defendants could be represented by partners at K&L Gates that are not subject to the conflict of interest (Messrs. Weed and Hanba).  Those attorneys have both been actively involved in the substance of the litigation (Callahan Decl. ¶ 10),would not require any additional time to get up to speed on the case, and Plaintiffs do not anticipate that disqualifying Morgan Lewis would result in any disruption to the case schedule.[12]  And to the extent Praxair wishes to bring on other counsel beyond Messrs. Weed and Hanba, it would have ample time to do so—trial is not scheduled until March 2017.  *See, e.g.*, *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 964 (D. Del. 1992).  Any doubts about the appropriateness of disqualification should be resolved in Plaintiffs' favor "to ensure protection of client confidences."  *Intellectual Ventures I LLC*, 2011 U.S. Dist. LEXIS 154921, at *15.  Indeed, this entire situation arose based on affirmative decisions made by Morgan Lewis and the Lateraling Attorneys, and not by any action on the part of Plaintiffs.

The events leading up to this Motion further support disqualification.  Morgan Lewis did not provide Plaintiffs with any advance notice of the issue.  (Provoost Decl. ¶ 27.)  Instead, Plaintiffs were surprised to learn about the conflict through the trade press.  (*Id.*, Ex. 16.)

---

[12]   Plaintiffs note that shortly after they informed Defendants of their intent to move to disqualify Morgan Lewis, Messrs. Weed and Hanba abruptly withdrew from the case on April 28, 2016.  (D.I. 89.)  The timing of the withdrawal is curious, but regardless of whether Messrs. Weed and Hanba are currently listed on the docket, Defendants cannot dispute that alternative counsel familiar with the case is readily available.

Plaintiffs were also justifiably disappointed that their longtime primary outside counsel that they had engaged for substantially related legal work did nothing to address the plain conflict of interest and, instead, brazenly asserted that it could sue them despite that manifest conflict and the lack of any applicable consent.  The fact that the Lateraling Attorneys did not *personally* represent Ikaria does not obviate the need for disqualification, nor does the fact that Morgan Lewis has implemented an ethical wall.  *See, e.g.*, *EON Corp* 2012 U.S. Dist. LEXIS 136388, at *14-15; *Intellectual Ventures*, 2011 U.S. Dist. LEXIS 154921, at *35-45.

The Model Rules serve to maintain "public confidence in the integrity of the bar." *Innovative Memory Sols.*, 2015 U.S. Dist. LEXIS 63861, at *4.  Allowing Morgan Lewis to continue as Defendants' counsel would undermine this fundamental purpose.  *See Intellectual Ventures I LLC*, 2011 U.S. Dist. LEXIS 154921, at *12, 41 n.10.  Short of switching sides in the very same lawsuit, there are few scenarios that involve matters as "substantially related" as the instant case and that so clearly merit disqualification. (*See* Metzloff Decl. ¶¶ 10, 36-38.)

## V.  CONCLUSION

Plaintiffs request this Court to disqualify Morgan Lewis as Defendants' counsel for the reasons set forth above.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*
_____

OF COUNSEL:

Kenneth G. Schuler
David K. Callahan
Marc N. Zubick
Brenda L. Danek
Sarah W. Wang
LATHAM & WATKINS LLP
330 North Wabash Ave
Chicago, IL 606
(312) 876-7600

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
dfahnestock@mnat.com

*Attorneys for Plaintiffs*

20

Andrew J. Fossum
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
(713) 546-5400

David F. Kowalski
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400

Melissa A. Brand
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
(617) 948-6000

Nicholas Yu
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

May 6, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2016, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

May 6, 2016, upon the following in the manner indicated:

Melanie K. Sharp, Esquire                           *VIA ELECTRONIC MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendants*

Michael J. Abernathy, Esquire                       *VIA ELECTRONIC MAIL*
Sanjay K. Murthy, Esquire
Maria E. Doukas, Esquire
Jennifer M. Dienes, Esquire
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
*Attorneys for Defendants*

Colm F. Connolly, Esquire                           *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1007 North Orange Street
Suite 501
Wilmington, DE  19801


/s/ Derek J. Fahnestock
Derek J. Fahnestock (#4705)